**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

BERT S. CARVER,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C08-4033-PAZ

**MEMORANDUM OPINION
AND ORDER**

_____

This matter is before the court for judicial review of the defendant's decision denying the plaintiff's applications for disability insurance ("DI") benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.,* and supplemental security income ("SSI") benefits under Title XVI of the Act.

The plaintiff Bert Carver was awarded disability benefits for a closed period from July 17, 1999, through August 31, 2001. He was found able to return to substantial gainful activity as of September 1, 2001. (A.R. 87, 92) Carver appealed the Commissioner's decision denying him ongoing disability benefits, but the decision was affirmed. On March 23, 2004, Carver filed new applications for DI and SSI benefits, alleging he has been disabled since January 27, 2004, the day following the most recent prior decision finding him not to be disabled. For purposes of the present applications, he claims he is disabled due to ongoing problems from a previously broken right ankle; arthritis in his lower back, right ankle, and foot; and ongoing pain in his right ankle, back, and hip. Carver's applications were denied initially and on reconsideration. Following a hearing on October 18, 2007, an ALJ again denied Carver's claim. The ALJ found that although Carver is unable to perform any of his past relevant work, which included pallet construction and chrome work, or even the full range of sedentary work, he retains the

functional capacity to perform a significant number of jobs that exist in the national economy, including, for example, jobs such as a final assembler, packager, and call-out operator. On March 17, 2008, the Appeals Council of the Social Security Administration affirmed the ALJ's denial of benefits, making the ALJ's decision the final decision of the Commissioner.

Carver filed a timely Complaint in this court seeking judicial review of the Commissioner's decision. Carver argues substantial evidence in the record does not support the Commissioner's decision that he is not disabled. *See* Doc. No. 13. On August 22, 2008, with the parties' consent, the Honorable Donald E. O'Brien transferred the case to the undersigned for further proceedings and the entry of final judgment in the case. The parties have briefed the issues, and the matter is now fully submitted and ready for review.

The issue before the court is whether the ALJ applied the correct legal standards, and whether his factual findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citations omitted). In this deferential review, the court considers the record in its entirety to determine whether a reasonable mind would find the evidence adequate to support the Commissioner's conclusion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Carver was born in 1959, making him forty-four years old as of his alleged onset date. He completed the eighth grade in school, and is in the low to borderline range intellectually. He can add and subtract, but cannot multiply or divide.

Carver's medical problems began when he fell from a ladder at work in July 1999, breaking his right ankle. He apparently did not seek immediate treatment, causing his ankle to heal improperly and requiring multiple surgeries to reset and then treat the ankle. He experienced ongoing, increasing pain, and claims his ankle pain also has caused him

to experience ongoing low back and hip pain due to his need to favor the injured ankle. He has seen a chiropractor regularly for treatment of his back and hip pain.

In June 2005, an x-ray of Carver's right ankle revealed osteophytes at the medial margin of the tibiotalar joint, and "moderate degenerative joint disease, consistent with progression of post traumatic osteoarthritis." (A.R. 578) On June 10, 2005, after reviewing the x-rays, a treating physician opined that Carver was "completely disabled from any type of laboring type work" due to the degree of arthritis in Carver's ankle. (A.R. 577) He continued to have ankle pain, and he underwent a right ankle fusion in February 2006, with placement of hardware. He continued to complain of constant, increasing pain, and in October 2006, the hardware was removed in an attempt to address his pain complaints.

When his pain continued, he was referred to a pain management clinic in Iowa City, where he was seen in January 2007. Carver complained of chronic low back pain across the right side with no radicular symptoms, "persistent aching ankle pain, and burning/tingling paresthesias in the right heel." (A.R. 611) He was noted to be overweight for his 5'8" frame, at 247 pounds, and he reportedly had smoked one pack of cigarettes a day for twenty years. Notably, Carver had not refilled his pain medications because he was unaware they could be mailed to him, and he had been off all of his pain medications for over a week with no change in his symptoms. (A.R. 610-11) As a result, doctors did not plan to restart most of his medications, but did prescribe an anti-inflammatory medication. Objective examination revealed full motor strength of Carver's upper and lower extremities bilaterally, intact sensation except for partial numbness of his right heel, no trigger points, and a limping gait. Doctors advised Carver that "his best shot at improvement in low back pain would involve physical therapy, and particularly aqua therapy." (A.R. 611) Carver planned to visit a local recreation center near his

residence "to do some stretches and exercises in the pool." (*Id.*) He was directed to visit the pool three times per week, and return for followup in six months. (A.R. 612)

On March 9, 2007, Carver called the Iowa City pain clinic to request a refill of Vicodin tablets. Carver stated he had been out of the medication for a couple of months, and the Orthopedics Clinic would not refill the medication because the pain clinic had assumed his care. Carver indicated he had been given thirty tablets of Tramadol. The Vicodin prescription was refilled, and the pharmacy was asked to mail the medication to Carver. (A.R. 616) Treatment notes indicate Carver's medications at this time were Amitriptyline 50 mg, taken at night; the antidepressant Wellbutrin SR, taken daily; Cyclobenzaprine, a muscle relaxant, 10mg three times daily for pain; a stool softener; Vicodin, one to two tablets every six hours as needed for pain; Vistaril, an anti-anxiety medication prescribed to Carver for muscle spasms; Seroquel, a medication prescribed for the treatment of bipolar disorder; Salsalate, a nonsteroidal anti-inflammatory medication; and Tramadol, a pain medication. (*Id.*)

Carver also complains that his ongoing pain affects his ability to concentrate and causes him to experience symptoms of depression. He has seen a counselor periodically, and has been on antidepressant medications since the fall of 2004, with dosages increasing gradually over time. In February 2005, a state agency consulting psychologist reviewed Carver's mental health treatment records and opined Carver would be limited only mildly due to his mental health symptoms.

At the administrative hearing, the ALJ asked a Vocational Expert ("VE") to consider a person with Carver's vocational profile and an eighth grade education. Although Carver testified some of his education had been in special education classes, the ALJ expressly excluded that fact for purposes of his hypothetical question. The hypothetical individual for the VE's consideration had the following residual functional capacity:

> He has the ability to perform a full range of sedentary work with the following additional functional limitations. He cannot push or pull repetitively with his lower extremities, bilaterally. Bending, twisting, and turning from a seated position or standing position is limited to occasional. He cannot crawl. He can stoop occasionally. He can squat occasionally. He can kneel occasionally. He can climb occasionally. He cannot use air or vibrating tools. He cannot use motor vehicles. He cannot reach above his head bilaterally. There's more. He cannot work around moving machinery. I define moving machinery, which is machinery that is mobile. It does not include machinery with moving parts, even if those parts extend out beyond the base of the machines, such as robotic arms. He cannot work at unprotected heights. He cannot work in temperature extremes of cold or heat. These . . . limitations exist[], and I'm limiting my mentally-based limitations . . . to jobs . . . that can be performed at the unskilled level. For the purpose of this hypothetical in your response, I want you to consider only unskilled jobs. . . . [T]he ability to understand and remember detailed instructions is moderately limited. Carrying them out would be moderately limited. The ability to respond to changes in a work setting would be slightly limited. The ability to respond to pressures in a work setting would be moderately limited. . . . With regard to his sitting, this individual would need the ability to shift in position while seated. He would need the ability to stand every 45 minutes. He could remain on task while he stood. And standing would, I'm not calling it a break because it's not a break. But he would need to stand for five minutes out of every 45. . . That's an additional regularly scheduled break.

(A.R. 674-76)

The VE testified the hypothetical individual described by the ALJ could not perform any of Carver's past work, but could perform other jobs that exist in the regional economy including final assembler, "a sedentary job [that] would allow for the standing every 45 minutes," with 630 similar jobs existing in the four-state region of Iowa, Nebraska,

5

Kansas, and Missouri; a packager job, which "also is sedentary and would allow for the standing every 45 minutes," with 200 jobs existing in Iowa and 750 in the four-state region; and a call-out operator, which is a sedentary job of which approximately 200 exist in Iowa, and 750 exist in the four-state region. The VE indicated that if the hypothetical individual had to stand every thirty minutes, instead of every forty-five minutes, her response would not change. (A.R. 676-77)

If a requirement were added that the individual would have to elevate either one or both of his legs waist high for thirty minutes every two hours, the VE indicated there would be no competitive employment available to the individual. (A.R. 678) In addition, if the individual described by the ALJ could not maintain attention and concentration consistently for a two-hour period, then he also would be unable to maintain any gainful employment. (A.R. 679) If he had to lie down for two hours during the day, he would be unable to work, and if he needed to take a thirty-minute, unscheduled break during the day, he would be unable to work. (A.R. 683)

In finding that Carver retains the ability to perform "a full range of sedentary work with additional limitations" (A.R. 29), the ALJ found Carver's subjective complaints not to be entirely credible. He found Carver's complaints to be "very vague," and he noted Carver has not sought or received any "serious psychiatric treatment that would support his assertion that he lacks the mental capacity to focus or concentrate." (A.R. 28) He further noted Carver had not received steroid injections for his back pain and no physician had recommended back surgery. In addition, the ALJ found that Carver had not received any chiropractic care since March 10, 2005. (A.R. 28-29) The ALJ recognized that Carver is limited somewhat by his chronic ankle pain, but he noted Carver had never reported to any physician that he needed to elevate his leg for thirty minutes every two hours, and he found the extent of Carver's claimed pain level to be "questionable in light of statements that his pain level does not increase with particular changes[, while at] other

6

times, he has gone off of his medications without any apparent difference." (A.R. 28) The ALJ therefore concluded Carver retains the capacity to work and he is not disabled.

The court finds the record evidence supports Carver's claim that he is unable to work. He has never stopped complaining of significant pain since the time of his accident. His complaints obviously were deemed credible because he underwent surgical procedures to relieve the pain, including arthroscopy and extensive debridement of the ankle in August 2005, right ankle arthroscopic arthrodesis in February 2006, and removal of hardware in October 2006. In addition, doctors prescribed strong narcotic pain medications for him throughout this period. The fact that Carver's symptoms did not change when he was off his medications for brief periods of time could as easily demonstrate the severe nature of his pain as the opposite conclusion reached by the ALJ, and in addition, this fact supports Carver's claim that even narcotic pain medications do little to relieve his constant pain. The court finds the ALJ's factual findings are not supported by substantial evidence on the record as a whole.

In addition, the court finds the ALJ's conclusion that Carver had not been treated by a chiropractor since March 2005 to be inconsistent with Carver's testimony that he continues to see his chiropractor every couple of weeks. When the ALJ noted that records submitted to the agency from the chiropractor only evidenced treatment through March 2005, Carver's attorney indicated he would obtain the additional records for submission. (A.R. 668) However, at the close of the hearing, the ALJ declined to keep the record open to allow the submission of additional records, noting if he did so, Carver's claim would "waste away in post" if the ALJ decided to affirm the denial of benefits. (A.R. 683) Such a practice does not meet the ALJ's duty to develop the record fully and fairly. *See, e.g.*, *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) ("It is the ALJ's duty to develop the record fully and fairly, even in cases in which the claimant is represented by counsel.); *accord Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing *Dozier*).

The court finds the record does not contain substantial evidence to support the denial of benefits, and contains overwhelming support for an immediate award of benefits. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (on judicial review, if court finds denial of benefits was improper, court "may enter an immediate finding of disability only if the record 'overwhelmingly supports' such a finding") (citations omitted). Accordingly, the Commissioner's decision is **reversed**, and this case is remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a finding that Carver has been disabled since January 27, 2004.

**IT IS SO ORDERED.**

**DATED** this 7th day of August, 2009.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT